Granger, C. J.
The complaining creditors urge that the evidence proved that Edward Purcell owed debts on which John B. was not liable.
The trial court found otherwise, and we have no right to disturb that finding unless the record shows that it is clearly wrong.
Edward was dead when the appellants proved his liability for moneys in large sums received by him as guardian and not accounted for. It was not claimed that Edward was dishonest. His intent to do no wrong was admitted. The testimony of John was that Edward for all the time covered by the transactions, .was a priest of the Roman Catholic church; that he had no property or business of his own; that his business was the management of the financial affairs of John in furtherance of the interests of the arch diocese; that his payments out were for John; that Edward had no debts except such as were John’s debts, and that he (John) was liable for all of Edward’s debts. Although Edward’s deposition, taken prior to the trial, contains no question or answer touching directly upon his liabilities as guardian, it did contain the following questions and answers:
Q. 15. State whether the moneys received by you in the course of said business were to any extent used or expended by you for yourself or your own benefit, or for the benefit of the archbishop, and if for the latter, state in what way and for what purposes? A. They were .not expended for my use or benefit, but for the use of the archbishop, as archbishop of the diocese, for building churches, school houses, orphan asylums, taxes, and several other and divers purposes; much of course was paid back as demanded by the depositors, with interest; also to persons calling for charities or for the education of young men in Rome, France and elsewhere, who aspired to the priesthood.
Q. 16. State, if you know, whether on March 4th, 1879, *198 John B. Purcell had any debts of any kind, excepting those so contracted by you on his account ? A. He had not.
Q. 17. State whether or not, at that time you had any debts excepting those so contracted by you on account of John B. Purcell? A. I had no debts other than the above.
Q. 25. Look at the affidavit signed by you and marked “ P. S.” for identification, and now-exhibited to you, and state if the statements made therein are true, and if you now adopt and make those statements part of this deposition, and if so, attach a copy of said affidavit hereto, and make it a part hereof and mark it “ Exhibit Z.” A. The statements referred to above are true, and I now attach the affidavit marked “ Z.”
Q. 26. Look at the affidavit signed by J. B. Purcell, and marked for identification “ P. S.,” and now shown and read over to you, and state if the statements therein made by him are true, and if so, attach a copy of said affidavit hereto, and make it part hereof, and mark it “ Exhibit W.” A. These statements I believe to be true, and I attach a copy of the affidavit marked “W.” I know of no other indebtedness of the archbishop, excepting that which was contracted by me on his account.
In said “ Exhibit W.” John B.' Purcell testified thus : “ Having no other debts than those standing in the name of Edward, or for which Edward was liable jointly and severally with affiant, and all the indebtedness of Edwmrd having been contracted on affiant’s account, and affiant being morally, equitably and legally as much bound therefor as if he had in his own name given the evidences of such indebtedness to the creditors, affiant took counsel of some of the prominent laymen of his church as to the best course to pursue under the circumstances, and they considering it more befitting and less unseemly that the assignment should be made by Edward than by affiant, and in order to prevent complications from' arising thereunder by reason of affiant holding in his own name by virtue of his office of archbishop of the Roman Catholic church for the diocese of Cincinnati, the legal title to the parochial prop *199 erty of the several congregations under his charge, which had been purchased by them respectively for their own use and was, in fact, held by him in trust for them, advised affiant to convey to Edward all property which he had the right to dispose of for that purpose, to the end that Edward should make a general assignment for the equal benefit of all creditors, and on the 4th day of March, 1879, by deed of same date, recorded March 5, 1879, in Book No. 492, page 627, of the records of Hamilton county, he conveyed to Edward the property therein described, being all the property of which he considered he had any right of disposition, for the benefit of creditors, to the end and with the sole intent that the same should be at once conveyed by-Edward, together with all the property, real and personal, by him owned, to John B. Mannix, by deed of general assignment for the benefit of his creditors, who, as before stated, were likewise the creditors of affiant; that Edward did, simultaneously with the execution of said deed to him, and as part of the transaction, make, execute and deliver to said John B. Mannix a deed of general assignment under the laws of Ohio, conveying to him, for the equal benefit of all of his creditors, all his property, real and personal, and said deed of assignment was filed in the probate court of this county on the 5th day of March, 1879, at eight o’clock A. M., and said John B. Mannix was on the 12th day of March, 1879, duly qualified, and is now engaged in the execution of his trust as assignee under said deed. That being subsequently advised that it was contended that said conveyance and deed of assignment discriminated against the creditors of affiant, he, to remove all misapprehension in the premises, on the 11th day of March, 1879, by deed of that date, conveyed to the said John B. Mannix, in trust for the payment of his debts, including as part thereof the said indebtedness of Edward incurred on his account, all and singular the real and personal property of which affiant was seized at law or in equity, or to which he had any claim, or in which he had any interest at law or in equity, including every species of estate, real or personal, which might by any *200 proceeding at law or in equity be subjected to the payment of his debts, but not including property held by him in trust for others, or which catínot in law or in equity be subjected to the payment of his debts; and said deed of assignment was filed in the office of said probate court, on the 12th day of March, 1879, and said assignee was on the next day duly qualified, and is still engaged, in the execution of his trust under said deed. Affiant further says, that said deed of March 4th, 1879, was made by him in the utmost good faith, and solely for the benefit of his creditors, and that he has not at any time conveyed or assigned .any portion of his property, with intent to hinder, delay or defraud, them, or any of them.”
And Exhibit X ” contains the following sworn statement of Edward Purcell:
“ Affiant further says that for the past forty years he has been the financial agent and representative of the said John B. Purcell, and has had the control and management of his financial affairs, and in said capacity he received and loaned out during said period large sums of money, and purchased with part of said deposits divers tracts and parcels of real estate ; that the title to said real estate was generally taken in the name of John B. Purcell, but the accounts of said deposits were kept in the name of affiant, who gave his individual obligations therefor, and evidences of indebtedness and securities for loans were taken by affiant .in his own name; that in the course of his financial agency and management affiant contracted a large indebtedness on account of his co-defendant, for all of which he was personally liable and bound, having obligated himself therefor individually, or jointly and severally, with said John B. Purcell; that this affiant had no debts whatsoever other than those so contracted by him on account of his co-defendant, nor did the said John B. Purcell have any such item whatsoever other than that so contracted on his account by this affiant; that when affiant became unable to meet the demands of creditors, and after many suits had been brought against his co-defendant and himself upon evidences of indebted *201 ness so given by affiant, the said John B. Purcell, being thereunto advised by prominent laymen who did not consider it seemly that the assignment should be made directly by him, and in order to prevent complications which might arise from such direct assignment by reason of his holding in his name, by virtue of his office of archbishop of the Roman Catholic church for the diocese of Cincinnati, the legal title to the parochial property of the several congregations under his charge, which had been purchased by them respectively for their own use, and was in fact held in trust by him for them, made the said deed of March 4th, 1879, conveying to affiant the premises therein described, most of which had been purchased by affiant with part of said deposits with the object and intent that affiant should at once convey said premises, together with all property, real and personal, owned by him, to John B. Mannix for the equal benefit of all creditors.”
In addition to the ordinary presumption which holds that a witness is truthful until the contrary is in some way shown, counsel have assured us that they do not question in any degree, or manner, the integrity of Edward, or of John. While John was ignorant of the business, Edward was familiar with it. It was his life-work. Either he had wholly forgotten his indebtedness as guardian, or he did not tell the truth when he said that he owed no debts except those contracted for John; or the moneys that he did not refund to his wards were disbursed for like objects with the moneys that he failed to repay to the depositors, to wit, for purposes of the arch-diocese “ in John’s business; ” for purposes that made John a debtor for the money of Edward’s wards, as fully as for the moneys due to the depositors. The record discloses no evidence tending to show any expenditure of money by Edward for any purposes of his own, yet not less than $12,000, and possibly (the evidence is not clear) over $20,000 of moneys received by Edward as guardian had disappeared. Edward had been repeatedly cited to account for them. Suits had been brought. His sureties had paid moneys for him. We think the trial court *202 ought not to have found that he had forgotten his indebtedness as guardian. The alternatives were either (1) his statement that he owed no debts besides those for which John also was liable was wilfully false; or (2) he had expended the money as John’s financial agent under such circumstances that John himself was liable to every creditor of Edward for the whole of Edward’s debts.
We therefore think the finding of the trial court in favor of said second alternative was right. We think it unnecessary to discuss the other findings of fact. It is enough to say that it does not clearly appear that either of them is not supported by the evidence.
But it is urged that for much of the indebtedness Edward and John were liable only in the alternative. That every creditor who so dealt with Edward that he might hold either brother as his debtor, by electing to file a claim against Edward with the assignee, will thereby release John. That the legal effect of the deeds is to compel this class of John’s creditors to release him from all liability, as a condition precedent to sharing in the assignee’s dividends; that he could not lawfully impose such a condition, and therefore his deed was made with an intent, in law, to defraud his creditors. It is true that, ordinarily, one who so deals with an agent that he may choose whether he will make the agent, or the principal, his debtor, by taking judgment against the agent, or by accepting a dividend from the agent’s assignee, estops himself from thereafter suing the principal. But the principal and agent may by agreement, or by act, convert this alternative liability into a joint and several liability; or a liability in succession. Either may estop himself from claiming that the election of the creditor to treat the other as his debtor has released him. It seems to us plain, that the archbishop had no thought of any such release; that neither of the brothers contemplated any such condition precedent, or any advantage over any creditor. Any such stipulation would be a fraud upon that class of creditors. But while courts are continually announcing that “fraud will not be presumed,” *203 we are asked to presume that these brothers so intended, because every such creditor who proves a claim and accepts a dividend from assignee Mannix will thereby release the archbishop. That there is a legal though not an actual fraudulent intent.
In most solemn form both brothers, as shown by this record, have testified that these deeds were made so that the property should be equally distributed to John’s creditors ; that Edward was used for John, in order that an archbishop should not appear as an assignor under the insolvent laws of Ohio; that John’s property should, nevertheless,, be distributed under those very laws to all of his creditors. John, Edward and Mannix, all believed that Edward’s assignment would have precisely the same effect upon property and upon creditors as an assignment by John himself would have; and they intended that it should have that precise effect. The presumption, therefore, is that they intended to reserve no right to either that would prevent the accomplishment of this main purpose. They assumed as the basis of their action that Edward was so liable for all of John’s debts, that his assignment would stand as John’s under the Ohio Statute. John expressly declared that all of Edward’s debts were his debts and all his debts Edward’s debts. Edward by accepting the deed agreed to that basis ; John, by so making the deed, authorized all his creditors to present their claims against Edward. So doing, without express reservation, he estopped himself from setting up such presentation as a release to him.
It seems to us, therefore, that John is forever estopped from claiming that any creditor by proving his claim and taking a dividend from the assignee, thereby released him from liability for the unpaid balance. By equally solemn statements Edward estopped himself, and all claiming under him, from asserting that any creditor who, before, or after, March 4,1879, pushed his claim to judgment against John, thereby lost his right to a dividend from the assignee. This record shows, in effect, that on March 4,1879, Edward assumed (at least to the extent of the property conveyed) *204 all the debts of John, and that John assumed all the debts of Edward; that all the creditors could from that time safely prove their claims before the assignee and share his dividends, withont in anjr manner affecting their right to hold John B. Purcell for unpaid balances; and that Mannix, who took with full notice, is bound to treat every creditor of John B. Purcell, who proves his claim, as a creditor of Edward Purcell to the extent of a pro rata dividend out of the trust property, whether such creditor has taken judgment against John B. Purcell, or not. The making by John, and the acceptance by Mannix, of the deed dated March 9, 1879,'following so promptly the first intimation that the deed to Edward was questioned, we think confirms the inference we have drawn from the last named deed, and the agreement under which it was made.
Although the case was argued in print as well as orally, counsel urged nothing under their other assignments of error. We therefore have considered no question touching evidence admitted or excluded. The judgment of the district court is

Affirmed.